In the

# United States Court of Appeals
## For the Seventh Circuit

No. 05-2278

LIDUINA ESTREMERA,

*Plaintiff-Appellant,*

v.

UNITED STATES OF AMERICA,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 03-CV-00712—**William E. Callahan, Jr.**, *Magistrate Judge.*

ARGUED JANUARY 5, 2006—DECIDED MARCH 27, 2006

Before FLAUM, *Chief Judge,* and ROVNER and WILLIAMS, *Circuit Judges.*

FLAUM, *Chief Judge.* Plaintiff-Appellant Liduina Estremera ("Estremera") owned a grocery store in Milwaukee. One of the clerks in her store violated Food Stamp Program regulations by selling ineligible items to customers. The Department of Agriculture, Food and Nutrition Services ("FNS" or "Agency") permanently disqualified Estremera's store from participating in the Food Stamp Program. Soon after, Estremera sold the store to Sousa Investment, LLC ("Sousa Investment"). At this time, FNS assessed a $66,000 civil monetary penalty against Estremera, pursuant to 7 C.F.R. § 278.6(f)(2). This regulation allows FNS to impose a penalty when a business that

has violated Food Stamp Program regulations transfers ownership of the business. Estremera brought suit in federal district court challenging the penalty. The district court granted summary judgment for the government, and Estremera appealed. For the following reasons, we affirm the decision of the district court.

## I. Background

Estremera was the owner, sole stockholder and director of a grocery store in Milwaukee called Pago Poco, Inc. ("store"). The store accepted food stamps. In September 2002, FNS sent Estremera a letter notifying her that there was evidence that the store violated Food Stamp Program regulations by exchanging food stamp benefits for cash and ineligible items. According to Estremera, unbeknownst to her, a former employee had sold illegal items to undercover USDA officers on six occasions.

On October 15, 2002, FNS notified Estremera by letter that she was immediately and permanently disqualified from accepting food stamps at the store. The letter explained that, in the event Estremera sold the store, she would be subject to a civil monetary penalty pursuant to 7 C.F.R. § 278.6(f)(2).

Estremera filed an administrative appeal challenging her disqualification from the Food Stamp Program. The Administrative Review Branch of FNS affirmed the disqualification decision. Estremera did not appeal from that decision.

In February 2003, Estremera may have sold the store to Sousa Investment. (Estremera claims she did not sell it; the government claims she did). On February 20, 2003, Estremera signed a consent action agreement to sell the store to Sousa Investment, a bill of sale for the store, a real estate closing statement confirming the sale to Sousa Investment, and an affidavit attesting to the sale of the

store. Also on February 20, 2003, Sousa Investment signed a mortgage note payable to Pago Poco, Inc., requiring Sousa Investment to pay Pago Poco the principal sum of $44,000 and 5% interest per year on the unpaid balance. Additionally, on that date Estremera and Sousa Investment signed a 5-year "lease" (March 1, 2003 to February 28, 2008), requiring Sousa Investment to pay plaintiff $4500 per month.

In a letter dated March 6, 2003, Joao C. DeSousa of Sousa Investment informed FNS that Estremera does not have a financial interest in the store, except that she receives rent for the space and operates and retains control of the liquor department.

On April 3, 2003, FNS sent Estremera a letter notifying her that, due to her sale of the store, she was required to pay $66,000 as a civil monetary penalty for her past violations of Food Stamp Program regulations. The penalty was based on six counts of food stamp fraud. FNS assessed the maximum fine available for each violation, $11,000. *See* 7 C.F.R. §§ 3.91(b)(3)(i) and 278.6(g). Estremera appealed the fine to the Administrative Review Branch of the FNS, which upheld the imposition of the $66,000 penalty.

Estremera brought suit in federal district court under 7 U.S.C. § 2023(a)(13) challenging the penalty. The government filed a motion for summary judgment. The district court granted the motion and dismissed Estremera's complaint. Estremera then filed a Rule 59(e) motion to alter or amend the judgment, which the district court denied. The district court found that Estremera used the motion improperly to advance a new legal theory, i.e., that the agency's imposition of the civil penalty was arbitrary and capricious, and to rehash arguments already decided on the motion to dismiss. Estremera appeals.

## II. Discussion

Estremera raises three errors on appeal. First, she maintains that she never sold the store to Sousa Investment and that the district court erred by determining that a sale occurred. Second, she argues that the district court applied the wrong standard of review to several aspects of the Agency's decision to fine her in the amount of $66,000. Third, Estremera asserts that the district court erred by determining that the Agency calculated her fine correctly. As explained below, we are not persuaded by these arguments.

### A. *Sale of Pago Poco, Inc.*

According to Estremera, summary judgment was inappropriate in this case because substantial facts remain in dispute regarding whether Estremera actually sold the store to Sousa Investment. Estremera maintains that she did not. According to her, the parties agreed that she would retain ownership of the store until Sousa Investment paid the $44,000 remaining on the mortgage note. Sousa Investment made only five payments on the note beyond its $1000 down payment. Thus, according to Estremera, the sale was never completed.

Estremera also argues that the sale was a "sham" or "aborted" transaction, because Sousa Investment never intended to pay off the mortgage note. She maintains that Sousa Investment's "bad faith" is evidenced by the fact that it made only five payments on the note beyond the $1000 down payment. Sousa Investment's actions, Estremera implies, rendered the sale void or voidable. Estremera further argues that even if Sousa Investment did not act in bad faith, the sale was a "legal nullity," because the sale was not completed and the business was "turned back over to Ms. Estremera."

Additionally, Estremera argues that there was no sale because she did not make an informed consent to the sale. She claims that her attorney in the real estate transaction failed to inform her of the likelihood that she would be required to pay a monetary penalty if she sold the store. Estremera's attorney in this action (who had nothing to do with the real estate transaction) signed an affidavit stating that he had knowledge—based on a review and analysis of the documents involved in the sale of the store—that Estremera's former attorney did not warn Estremera of the "looming 'transfer of ownership penalty.'"

Estremera admits that she signed an Admission stating that she "sold" the store to Sousa Investment. She argues, however, that she was confused over the meaning of the word "sold" when she made that statement. Estremera subsequently amended the Admission to state that a sale "did not legally occur."

The government argues that Estremera has failed to offer any evidence or legal authority in support of her argument that there was not a sale. The government also emphasizes that there is ample evidence that there was a sale: a signed consent agreement to sell the store; a signed bill of sale; a signed real estate closing confirming the sale; a signed affidavit from Estremera attesting to the sale; a signed mortgage note and lease; a signed personal guarantee of the mortgage note and lease; and a signed letter from the purchaser stating that Estremera did not have a financial interest in the store except for the rent she receives.

The district court considered these arguments and found that Estremera sold the store to Sousa Investment. We agree. All of the documents offered by the parties, including the bill of sale, consent action agreement, real estate closing statement, and Estremera's affidavit attesting to the sale, demonstrate that there was a sale. For instance, the real estate closing statement records "Pago Poco, Inc." as the

"seller" and "Sousa Investment, LLC" as the "buyer." The real estate closing statement also records the balance owed to Estremera, the seller, as "$-O-" as of the February 20, 2003, closing date. Additionally, there is nothing in the mortgage note to indicate that the sale was not final until the note was fully paid. The mortgage note shows simply that Estremera provided a mortgage to Sousa Investment. Under the terms of the mortgage note, if Sousa Investment defaulted on its payments, Estremera could require Sousa Investment immediately to pay off the entire balance owed to her.

Estremera's other arguments fail as well. Estremera asserts that the sale was void or voidable because Sousa Investment never intended to pay for the store. However, she offers no legal or factual support for this argument. The documents provided by the parties indicate that the sale was complete on February 20. Although Sousa Investment still owed payments to Estremera under the mortgage note, Sousa Investment was not required to pay off the mortgage in order to finalize the sale. Additionally, Estremera does not support her argument that the sale was a "legal nullity" because Sousa Investment never made all the payments due on the mortgage note. Nor does she ever explain how the store was "turned back over" to her after Sousa Investment stopped making payments on the mortgage note.

Moreover, the evidence shows that Estremera was, in fact, on notice that selling the business would result in the imposition of a penalty. The FNS warned Estremera of the penalty in its letter dated October 15, 2002. Even assuming Estremera was not warned by FNS, Estremera has submitted insufficient evidence to show that her former attorney failed to warn her of the penalty at the time she sold the store. Estremera's attorney in the present action submitted his own affidavit in support of her "failure to warn" argument. The affidavit was based on the attorney's review of the relevant documents and his interviews with

witnesses who had personal knowledge of the circumstances surrounding the "sale" of the store. Second-hand knowledge acquired in this way cannot, without more, establish that material facts are in dispute. Federal Rule of Civil Procedure 56(e) requires that supporting affidavits be based on personal knowledge, which Estremera's attorney did not possess. Moreover, "'[w]here evidence is easily available from other sources and absent "extraordinary circumstances" or "compelling reasons," an attorney who participates in the case'" should not serve as a witness. *United States v. Britton*, 289 F.3d 976, 982 (7th Cir. 2002) (quoting *United States v. Dack*, 747 F.2d 1172, 1176 n.5 (7th Cir. 1984)). Such extraordinary circumstances were not present here. Estremera's attorney could have introduced into the record the documents he relied on in his affidavit, and he could have obtained affidavits from the witnesses he interviewed in creating his own affidavit. Finally, even if we accepted that Estremera's former attorney failed to warn her of the penalty, Estremera has not explained why such negligence would make the sale a "legal nullity."

## B. Standard of Review in the District Court

According to Estremera, the district court should have reviewed the Agency's decision de novo, taking "into account the innocence of the store owner and other equitable principles." Specifically, she argues that the district court should have reviewed three questions de novo: 1) whether Estremera sold the store; 2) whether the penalty was appropriate; and 3) whether Estremera's store violated Food Stamp Program regulations. Estremera maintains that the district court gave undue deference to the Agency's opinion in answering these questions.

The government agrees with Estremera on the first point, that the district court should review de novo the Agency's finding of whether a sale occurred. The government maintains, however, that the district court properly did so. As to

Estremera's second argument, the government argues that the Agency's calculation of a penalty should be reviewed under the arbitrary and capricious standard, rather than de novo. As to her third argument, the government maintains that the district court properly refused to review the Agency's October 2002 finding that Estremera's store violated Food Stamp Program regulations.

We find that the district court applied the appropriate standard of review to all three questions identified by Estremera. First, the district court properly reviewed de novo the Agency's finding that Estremera sold the store in February 2002. The district court order states explicitly that "this court must review [the Agency's findings] de novo." It is clear from the order that the district court did so. The order contains a thorough discussion of the evidence and legal theories offered by both parties, and contains no indication that the district court gave deference to the findings of the Agency.

Second, the district court applied the correct standard of review to the Agency's calculation of Estremera's penalty. The district court explained that the "penalty imposed by the FNS for violations of the Food Stamp Program may be set aside only if it is arbitrary and capricious." *Brooks v. United States*, 64 F.3d 251, 256 (7th Cir. 1995).

Finally, the district court correctly refused to consider the question whether Estremera violated Food Stamp Program regulations. The Agency determined in October 2002 that Estremera's store violated Food Stamp Program regulations and thus was disqualified from accepting food stamps. Estremera challenged that decision, taking it to the Administrative Review Branch of FNS. The Administrative Review Branch affirmed FNS's disqualification decision. Estremera could have challenged this decision in federal district court, but she chose not to do so. The district court properly decided that it was too late for Estremera to argue

that her store did not violate Food Stamp Program regula-
tions.

## C.  *Calculation of the Penalty*

Estremera's final argument is that the district court erred
by finding that the penalty assessed by FNS was
not arbitrary and capricious. Estremera's argument consists
of three points: 1) the district court should have taken into
account her "innocence"; 2) the district court's decision
failed to take into account the statutory purpose of the
statute that authorized imposition of the civil penalty
against Estremera; and 3) the district court should have
determined that the Agency did not comply with regulations
governing calculation of the penalty.

### 1.  *"Innocence"*

Estremera argues that even under the arbitrary and
capricious standard, the district court erred by finding that
the agency's imposition of the penalty was proper. She
emphasizes that the agency failed to take into account her
innocence, i.e., that she did not know that her former clerk
was violating Food Stamp Program regulations. There is no
evidence that Estremera had knowledge of these violations.

The district court rejected this argument, finding that the
transfer of ownership penalty does not require a finding of
personal wrongdoing. Additionally, the district court noted
that Estremera never contested the Agency's October 2002
finding that she had violated Food Stamp Program regula-
tions. The district court also found that even if Estremera
was "innocent," she would still be liable for a monetary
penalty.

We agree with the district court. Estremera has offered no
legal support for her argument that the imposition or

amount of a penalty should depend on the actual knowledge of the store owner. Most importantly, Estremera never appealed the Administrative Review Branch's decision that the store violated Food Stamp Program regulations and should be disqualified from participating in the Program. As explained above, it is too late for Estremera to challenge that decision now.

### 2. Statutory Purpose

Estremera also maintains that the imposition of the penalty fails to "advance the purposes of the statute" authorizing her penalty, which, according to her, is to "deter abuses such as selling the store to friends and family or to end the disqualification period." The district court found that its review did not extend to the question whether the penalties imposed in this particular case furthered the intent of Congress.

The district court was correct. Estremera offers no support for her proposition that a penalty must be tailored to "advance the purposes of the statute" in order to survive the district court's review under the arbitrary and capricious standard. The district court's job was to determine, under the arbitrary and capricious standard, whether the Agency applied the appropriate statutes and regulations in the appropriate manner. This is what the district court did.

### 3. Calculation of the Penalty

Estremera argues that the Agency miscalculated her penalty. She argues that the Agency's regulations require the Agency to base the transfer of ownership penalty on her average monthly food stamp redemptions. *See* 7 C.F.R. § 278.6(g). Instead, Estremera maintains, the Agency

erred by assessing the maximum penalty allowed for each violation, $11,000.

Estremera did not raise this issue before the district court ruled on the government's summary judgment motion. She raised the argument for the first time in her Rule 59(e) motion to alter or amend the judgment. *See* FED. R. CIV. P. 59(e). Estremera has sworn that her penalty would have been lower than $66,000 if the Agency had considered her monthly food stamp redemptions, although she has not provided evidence as to the amount of those redemptions. Estremera claims that this is an issue of fact for a jury and that additional discovery is required.

The government argues that the Agency calculated Estremera's penalty in accordance with 7 C.F.R. § 278.6(g). According to the government, any sanction that "is within the prescribed range of the regulatory and statutory boundaries" cannot be found to be arbitrary and capricious. The government maintains that the applicable statute and regulations allow a maximum penalty of $11,000 per violation, the Agency found six violations, and the $66,000 penalty is therefore appropriate.

In ruling on the government's summary judgment motion, the district court concluded that the Agency correctly calculated the penalty. The district court evaluated the Agency's calculation of the penalty even though Estremera did not question whether the Agency applied its regulations correctly. 7 C.F.R. § 278.6(g) provides that a penalty should be calculated by using a formula based on the average monthly food stamp redemptions of the disqualified firm, but that the penalty "may not exceed an amount specified in § 3.91(b)(3)(i) [($11,000)] for each violation." The district court found that because Estremera did not present any evidence as to the store's monthly food stamp redemptions and did not argue that calculating the penalty based on that amount would yield a result less than $66,000, it could

presume that such calculation would yield an amount greater than $66,000.

In its subsequent ruling on Estremera's Rule 59(e) motion, the district court found that it was too late for Estremera to argue that the Agency's calculations were incorrect. The district court rejected her argument that it was the government's burden to show that the agency's determination is valid. Because Estremera sought de novo review of the decision of the Administrative Review Branch, it was her burden to prove by a preponderance of the evidence that the agency's determination was invalid. *See Abdel v. United States*, 670 F.2d 73, 77 (7th Cir. 1982).

We agree with the district court that Estremera waived her right to challenge the Agency's calculation of her penalty by failing to object to it before the district court ruled on the government's summary judgment motion. It is well settled that "arguments not raised in the district court are waived on appeal." *Belom v. National Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002). It is unclear whether Estremera is attempting to challenge the district court's ruling denying her Rule 59(e) motion. Regardless, an argument raised for the first time in a Rule 59(e) motion is waived. *See United States v. Rueth Devel. Co.*, 335 F.3d 598, 606 (7th Cir. 2003); *Kruger Int'l, Inc. v. Blank*, 225 F.3d 806, 811 (7th Cir. 2000).

We note for purposes of clarification, however, that the Agency should not apply the $11,000 maximum penalty without considering the disqualified store's average monthly food stamp redemptions. 7 C.F.R. § 278.6(g) provides:

> Amount of civil money penalties for hardship and transfer of ownership. FNS shall determine the amount of the civil money penalty as follows:
>
> (1) Determine the firm's average monthly redemptions of coupons for the 12-month period ending with

the month immediately preceding that month during which the firm was charged with violations.

　(2) Multiply the average monthly redemption figure by 10 percent.

　(3) Multiply the product arrived at in paragraph (g)(2) by the number of months for which the firm would have been disqualified under paragraph (e) of this section. The civil money penalty may not exceed an amount specified in § 3.91(b)(3)(i) of this title for each violation.

7 C.F.R. § 3.91(b)(3)(i) provides, in turn, that the maximum penalty per violation is $11,000.

As the language of these regulation demonstrates, the Agency was required to determine the store's average monthly redemptions for the 12-month period prior to the store's violations, and then perform the calculations specified in 7 C.F.R. § 278.6(g). Although it is not entirely clear from the record, it appears that the Agency simply applied the maximum civil monetary penalty, $11,000 per violation, for a total fine of $66,000. There is no language in the statute indicating that Estremera had the burden to show that the penalty calculated using the above formula would be less than a penalty calculated using the maximum per-violation amount. In the district court, however, Estremera had the burden to prove by a preponderance of the evidence that the Agency's calculations were incorrect. *See Abdel v. United* States, 670 F.2d 73, 76-77 (7th Cir. 1982); *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991) ("The burden of proof in the judicial review proceeding is upon the aggrieved store to establish the invalidity of the administrative action by a preponderance of the evidence."). Because Estremera did not challenge the Agency's calculation of her penalty until she moved to alter or amend the district court's judgment, we will not consider that challenge now.

### III. Conclusion

For the foregoing reasons, we AFFIRM the decision and order of the district court granting summary judgment for the government.

A true Copy:

Teste:

_____

*Clerk of the United States Court of Appeals for the Seventh Circuit*