In the

# United States Court of Appeals

### For the Seventh Circuit

No. 13-2420

BRIAN A. MAUS,

*Plaintiff-Appellant,*

*v.*

DIANE BAKER, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:09-cv-00042-RTR — **Rudolph T. Randa**, *Judge.*

SUBMITTED MARCH 19, 2014 — DECIDED APRIL 4, 2014

Before POSNER, KANNE, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* The plaintiff filed suit under 42 U.S.C. § 1983 against guards and other personnel at a county jail in which he'd been a pretrial detainee. His claim that they had used excessive force against him survived summary judgment and was tried to a jury, which found for the defendants. The plaintiff was a prison inmate at the time of his trial, and his only substantial claim on appeal is that he was denied a fair trial because he was compelled to wear

shackles and his prison uniform in the courtroom—with the shackles (as well as, of course, the uniform) visible to the jury—while the defendants were allowed to, and did, appear in their jail-guard uniforms, the contrast between their uniforms and the plaintiff's uniform highlighting the difference in social standing between them and him. The judge made no effort to prevent the shackles from being seen by the jurors and didn't even tell them not to allow the sight of the shackles to influence their decision, though he had promised before trial to give such an instruction.

Remarkably, the record does not indicate the extent to which Maus was shackled. We know that before the trial began his lawyer asked the judge to direct that Maus be free of "all shackles, hand cuffs, leg irons, and other restraints" during the trial. And we know that he was handcuffed during the trial except when he testified. What we don't know is whether he was wearing leg irons—better described as "ankle cuffs," and now often called "legcuffs," since they differ from handcuffs only in being somewhat larger.

The sight of a shackled litigant is apt to make jurors think they're dealing with a mad dog; and just the contrast between a litigant's wearing prison garb and his opponents' wearing law enforcement uniforms is likely to influence the jury against the prisoner, and has long been recognized as being highly prejudicial. See, e.g., *Holbrook v. Flynn*, 475 U.S. 560, 568–69 (1986); *Estelle v. Williams*, 425 U.S. 501, 504–05 (1976); *Illinois v. Allen*, 397 U.S. 337, 344 (1970); *Stephenson v. Wilson*, 619 F.3d 664, 668–69 (7th Cir. 2010). Although the issue has arisen mainly in criminal (including postconviction) cases, as in the cases just cited, it arises from time to time in civil cases as well, such as this case, and the prejudicial effect

of visible shackling and prison clothing has been recognized in those cases too. See, e.g., *Lemons v. Skidmore*, 985 F.2d 354, 356–57 (7th Cir. 1993); *Davidson v. Riley*, 44 F.3d 1118, 1122–23 (2d Cir. 1995); *Holloway v. Alexander*, 957 F.2d 529, 530 (8th Cir. 1992).

There may have been adequate reasons to shackle the plaintiff in this case—a violent person, who had attacked guards—but the shackles should have been concealed from the jury. E.g., *id.*; *Sides v. Cherry*, 609 F.3d 576, 584 (3d Cir. 2010); *United States v. Honken*, 541 F.3d 1146, 1152 (8th Cir. 2008). Ordinarily courtroom security can be assured by shackling the prisoner just at the ankles (skipping the handcuffs); and when that is done a curtain attached to the table at which he sits will hide the shackles from the jury's sight. If the prisoner is to testify, then seating him in the witness box before the jury enters and removing him from the box after the jury leaves for a break or for the day will keep the jury from seeing the shackles; the sides of the box will conceal them. There is no indication that these methods of concealment would have been infeasible in this case, and it is not even clear that the plaintiff is so violent that he had to be manacled at all. His handcuffs were removed, without incident, when he testified.

The "curative instruction" that the judge failed to give would not have eliminated the prejudice to the plaintiff arising from the visible manacles, the prison uniforms, and the guards' uniforms. Curative instructions have (as judges too rarely acknowledge) only limited efficacy. As we said in *United States v. Mazzone*, 782 F.2d 757, 764 (7th Cir. 1986), "we are not quite so naïve as to believe that telling jurors not to think about something will cause them to forget it." Jus-

tice Jackson once remarked that "the naïve assumption that prejudicial effects can be overcome by instructions to the jury all practicing lawyers know to be unmitigated fiction." *Krulewitch v. United States*, 336 U.S. 440, 453 (1949) (concurring opinion) (citation omitted); see also *Nash v. United States*, 54 F.2d 1006, 1006–07 (2d Cir. 1932) (L. Hand, J.). A "curative" instruction can even have negative efficacy. To tell jurors to ignore shackles may rivet the jurors' attention on them, see, e.g., Dan Simon, "More Problems with Criminal Trials: The Limited Effectiveness of Legal Mechanisms," *Law & Contemporary Problems*, vol. 75, no. 2, pp. 167, 176–77 (2012), especially if the judge explains to the jury why the plaintiff is shackled—that he's a violent, dangerous person. A truthful explanation for the shackles will be highly prejudicial—but without an explanation the jurors are left to wild conjecture. The proper course is thus to conceal from the jury that the defendant is shackled.

As for the judge's requiring the plaintiff to wear his prison clothing in court while allowing the defendants to wear their guard uniforms, no consideration of security justified that requirement and that permission. *Estelle v. Williams*, *supra*, 425 U.S. at 505–06. The plaintiff was not less dangerous by virtue of being in a prison uniform, or the guards safer by virtue of wearing their guard uniforms. The judge thought the clothing worn by the prisoner and the guards in the courtroom inconsequential because the jury knew that the plaintiff was a prisoner and the defendants were guards. Actually there would have been no reason for the jurors to think the plaintiff a prisoner had it not been for his prison clothing. For remember that his suit concerns events that had occurred when he had been a pretrial detainee, not a

prison inmate; he might since have been released from custody.

More important, being *told* that a plaintiff is a prisoner and the defendants guards, and *seeing* them in uniforms—one type of uniform branding the plaintiff as a prison inmate, the other denoting the defendants' status as law enforcers—are likely to create impressions differing in their strength. Although judges have been known to remark that if a party is known to be a prisoner, seeing him dressed as one adds nothing to whatever prejudice jurors harbor against prisoners, e.g., *United States v. Brooks*, 125 F.3d 484, 499 (7th Cir. 1997); cf. *Holloway v. Alexander*, *supra*, 957 F.2d at 530, we're skeptical—as is the Supreme Court, which has said that "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment. The defendant's clothing is so likely to be a continuing influence throughout the trial that, not unlike placing a jury in the custody of deputy sheriffs who were also witnesses for the prosecution, an unacceptable risk is presented of impermissible factors coming into play." *Estelle v. Williams*, *supra*, 425 U.S. at 404–05.

We said in *Lemons v. Skidmore*, 985 F.2d at 359, that "first, [the plaintiff] is entitled to the minimum restraints necessary, and a determination that some restraints are appropriate does not mean that leg-irons and handcuffs are required. Second, although the [trial] judge said that he would give a curative instruction to the jury, none was ever given. Third, there are various ways to minimize the appearance of restraints, and therefore minimize the likelihood of prejudice to the jury, and none of these ameliorative steps were tak-

en." These precepts, equally applicable to this case, require reversal, and a remand for a new trial.

REVERSED AND REMANDED.