# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

WILLIAM CODY SCHAEFER,

        Defendant-Appellant.

UNPUBLISHED
December 1, 2015

No. 322420
Jackson Circuit Court
LC No. 12-004778-FC

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

BECKERING, J. (*concurring*).

I concur with the result reached in the well-reasoned majority opinion. I write separately to address the trial court's shackling of defendant at trial and to encourage mitigation efforts going forward when a court deems shackling to be necessary.

It is well-established in this and other jurisdictions that "[i]ncluded within the right to a fair trial, absent extraordinary circumstances, is the right to be free of shackles or handcuffs in the courtroom." *People v Payne*, 285 Mich App 181, 186; 774 NW2d 714 (2009). Courts have long recognized the potential for shackles to affect jurors. See *Deck v Missouri*, 544 US 622, 631-632; 125 S Ct 2007; 161 L Ed 2d 953 (2005). "[T]he Supreme Court of Colorado stated . . . that the presumption of innocence requires the garb of innocence . . . . The Supreme Court of California [noted that] courts of other jurisdictions have long recognized the substantial danger of destruction in the minds of the jury of the presumption of innocence where the accused is required to wear prison garb, is handcuffed or otherwise shackled." *People v Dunn*, 446 Mich 409, 425, n 26; 521 NW2d 255 (1994) (internal quotation marks and citations omitted). Accordingly, "a defendant may be shackled only on a finding supported by record evidence that this is necessary to prevent escape, injury to persons in the courtroom or to maintain order." *Id*. at 425. This Court reviews a trial court's decision to shackle a defendant for an abuse of discretion under the totality of the circumstances. *Payne*, 285 Mich App at 186.

In this case, the prosecution argues that shackling defendant was proper for several reasons, including the fact that he was on trial for allegedly attacking two corrections officers and had attacked a corrections officer in court on another occasion. As evidence of the latter event, the prosecution cites the trial court's remarks when denying defense counsel's request before voir dire to unshackle defendant while the jury was in the courtroom:

Okay. Well, I—I've—I've talked with the correction officer in—especially in light of the fact that he's already assault [sic] one—allegedly assaulted one correction officer up on the fourth floor—the very small courtroom, I don't want him running. I don't [want] him trying to get up. I don't want anybody injured and I think I might given to understand the officers, that you think he's better shackled there?

It is unclear from this passage whether the trial court was referring to the incidents for which defendant was on trial—which involved an assault on corrections officers on the fourth floor of a correctional facility—or a separate assault that occurred on the fourth floor of the courthouse. At oral argument, the parties were unable to assist this Court in discerning whether a courthouse incident had, in fact, occurred. If it is true that defendant had attempted to attack a corrections officer in the courthouse, the decision to shackle was clearly indicated. Nevertheless, I agree with the majority that even if a courthouse assault did not occur, in light of the totality of the circumstances, the trial court's decision to shackle defendant did not rise to the level of an abuse of discretion. As the trial court recognized when deciding to shackle defendant, defendant was on trial for assaulting and attempting to murder corrections officers, had previous convictions for fleeing and eluding and resisting and obstructing, the design of the courtroom would allow defendant to disappear quickly if he escaped, other inmates would be in the courtroom to testify, adding to the security risks, and defendant was dressed in street clothes and thus able to blend in easily if he escaped.

However, I am concerned that little, if anything, was done to conceal defendant's shackles in this case once the decision was made to require their implementation. After denying defense counsel's motion to unshackle her client, the trial court commented that it would be "very difficult" for jurors to see defendant's shackles because there were cables and "a lot of things going on" underneath the defense table.[1] The record evidences, however, that it was not particularly difficult to see the shackles. When it was defense counsel's turn to ask questions of the jury pool, she noted that the purpose of voir dire is to select jurors who can be fair and impartial. She asked the panel before her if there was anything they had not yet disclosed when questioned by the court and the prosecutor that might cause them to feel they could not be fair. A potential juror spoke up and stated, "I'm really having –I've been wrestling with it since I sat down the fact that he's shackled to the floor is really skewing my impartiality."[2] Such a response underscores the very problem *Dunn, Deck*, and other cases set out to avoid wherever possible.

Although shackling is permitted in extraordinary circumstances, courts often note the importance of mitigating the inherent prejudice through simple measures like table-skirting, designed to prevent the jury from viewing a defendant's shackles. See *Payne*, 285 Mich at 187 (declining to find prejudice because "the record shows that the defense table in the courtroom

---

[1] Defense counsel disputed this assertion, stating, "Well, your Honor, there's nothing around the table," and "People sitting in the gallery behind us, when we're picking the jury before they get called up, they may have the opportunity to see the chain."

[2] This juror was later dismissed for cause.

was skirted with paper, which prevented the jury from seeing the shackles"); *People v Arthur*, 495 Mich 851; 836 NW2d 694 (2013), citing *Deck*, 544 US at 629[3] (Order post remand reinstating a defendant's convictions and sentences, wherein the Supreme Court noted that the "core rule of *Deck* is that 'the Fifth and Fourteenth Amendments prohibit the use of physical restraints *visible to the jury* absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial,' " and that in the instance in question, the trial court had "sought to shield the defendant's leg restraints from the jury's view" and "no juror actually saw the defendant in shackles."); *Maus v Baker*, 747 F3d 926, 927 (CA 7, 2014) (addressing the issue in the context of a prisoner's lawsuit under 42 USC 1983 and opining that "[o]rdinary courtroom security can be assured by shackling the prisoner just at the ankles (skipping the handcuffs); and when that is done a curtain attached to the table at which he sits will hide the shackles from the jury's sight.").

In this case, while not amounting to error requiring reversal, as the trial court properly exercised its discretion in deciding to shackle defendant, I believe that more should have been done to mitigate its impact on defendant's right to a fair trial. Expecting a cable under counsel table to obscure the shackles is simply not enough, and proved to be insufficient in this instance. As was done in *Arthur*, a measure as simple as shielding the shackles from view would suffice, such as through the use of table skirting at counsel table. And while the jurisdiction in question undoubtedly sees its fair share of criminal cases originating from nearby department of corrections facilities, a simple explanation to the jury to the effect of "what do you expect" when a person on trial happens to be a prisoner is insufficient. After the potential juror spoke up about his concern that the shackles were "really skewing [his] impartiality," the trial court responded with the following comment:

> Well, ladies and gentlemen, obviously we understand that the crime allegedly occurred in a correctional facility. We have two corrections officers sitting here in court. The venue of the crime, if you will, is in the Michigan Department of Corrections, allegedly. So I guess it's—would be kind of hard to—to negate some of those circumstances, do you understand that? Okay. Would it—would it surprise you that we, as an example, would take precautionary measures in a courtroom to make sure that everybody's safe?

Later, when defense counsel moved to strike the juror who expressed concern about defendant's shackles, the trial court seemed somewhat surprised, stating, in response to defendant's challenge for cause "I attempted to clear that up for you . . . ." Rather than telling the potential jurors that

---

[3] A Michigan Supreme Court order that is a final disposition of an application may constitute binding precedent to the extent that it can be understood as presenting a holding that is based on discernible facts and reasoning. *Dykes v William Beaumont Hosp*, 246 Mich App 471, 483; 633 NW2d 440 (2001).

a prisoner who is on trial is a person worthy of precautionary measures, the court perhaps could have reinforced—as it did later in its instructions—the presumption of innocence.[4]

While I understand and empathize with a trial court that often deals with criminal actions emanating from corrections facilities, I encourage trial courts to minimize the prejudicial effects of shackling wherever possible.

/s/ Jane M. Beckering

---

[4] When defense counsel raised a motion for a mistrial based, in part, on the juror who expressed before the entire jury pool his concerns about seeing defendant's shackles, the trial court listed several reasons to justify its decision, concluded defendant was a safety risk, and then stated, "and he's lucky I'm allowing him to sit there with—with civilian clothes on." It has long been recognized that a defendant has a due process right against being compelled to appear before the jury in identifiable prison garb. See, e.g., *Carey v Musladin*, 549 US 70, 75; 127 S Ct 649; 166 L Ed 2d 482 (2006). While I recognize that defendant was on trial for an offense that occurred inside a correctional facility, meaning jurors will know that he was previously incarcerated, a defendant should not be considered lucky when being afforded that which is guaranteed to him by the Fourteenth Amendment. See *id.*