In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1877

ANTHONY RODRIGUEZ,

*Petitioner-Appellant,*

*v.*

GREG GOSSETT, Warden,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Southern District of Illinois
No 3:10-cv-00077-DRH-SCW — **David R. Herndon**, *Judge.*

ARGUED FEBRUARY 9, 2015 — DECIDED NOVEMBER 23, 2016

Before ROVNER and SYKES, *Circuit Judges*, and WOOD,
*District Judge.**

WOOD, *District Judge.* Anthony Rodriguez was convicted
of two counts of predatory criminal sexual assault of a child
following a jury trial in the State of Illinois in 1997. Rodriguez

---

* Hon. Andrea R. Wood of the Northern District of Illinois sitting by
designation.

has petitioned for a writ of habeas corpus, contending that he was deprived of effective assistance of counsel under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and now appeals the district court's denial of his petition. Because we conclude that the Illinois Appellate Court did not unreasonably apply the *Strickland* standard, we affirm the district court's denial of Rodriguez's habeas petition.

**I.**

In late 1997, following a jury trial in the Circuit Court of Randolph County, Illinois, Rodriguez was convicted of two counts of predatory criminal sexual assault of a child and sentenced to 60 years in prison. The charges stemmed from an allegation by K.O., an 11-year-old girl, that Rodriguez had sexually assaulted her on two occasions. At the time of the incidents, K.O. and her mother, D.O., lived with Rodriguez in a home in Chester, Illinois.

At the trial, K.O. testified that D.O. left her in Rodriguez's care from early on Friday, May 9, 1997 until Monday, May 12, 1997 while D.O. attended a wedding in Chicago. K.O. further testified that, on the evening of May 9, she went to sleep in D.O.'s bed. She later woke up to find that Rodriguez had gotten into bed with her. Rodriguez then anally penetrated K.O. with his penis. Afterwards, Rodriguez got out of bed and K.O. felt a liquid substance by her underwear. The next evening, May 10, K.O. slept in her own bed. According to K.O., Rodriguez once again got into bed with her, pulled down the bed covers and K.O.'s underwear, and anally penetrated her with his penis. As before, K.O. felt a liquid substance. When D.O. returned home on May 12, K.O. did not immediately tell her

what had happened. Instead, K.O. waited about five days because Rodriguez "was always by [her]" and she never had a chance to be alone with D.O. K.O. testified that she was afraid of Rodriguez. Eventually, however, when K.O. was at the store where D.O. worked, K.O. told D.O. what had happened while D.O. was away.

D.O. also testified at trial. She testified that she left K.O. in Rodriguez's care early on the morning of Friday, May 9, and that she returned on Monday, May 12. On the night of May 11, while she was away, D.O. spoke to Rodriguez and asked him what he was doing. Rodriguez responded that he had been "up all night doing laundry." According to D.O., however, they had both done laundry before she left and they usually did laundry only once or twice per week. D.O. further testified that on May 20, 1997, K.O. told her what Rodriguez had done over the May 9 weekend. Like K.O., D.O. testified that K.O. had not had any opportunity to tell D.O. about the assaults before May 20 because Rodriguez "was always around." After K.O. told D.O. about the assaults on May 20, D.O. contacted the police and took K.O. to the hospital. She also testified that K.O. had attempted suicide in 1993 or 1994 because she was "broke apart" when D.O.'s fiancé was sent to prison.

The State also presented testimony from Jim Nesler, an investigator with the Illinois Department of Children and Family Services. Nesler testified that he interviewed K.O. on May 21, 1997 and that K.O. recounted to him the same two alleged incidents of abuse about which she testified at trial. Nessler further testified that he conducted an interview with Rodriguez on May 21, 1997, at which time Rodriguez acknowl-

edged that he looked after K.O. during the weekend in question but denied that he had any inappropriate contact with her.

The State's final witness was Dr. Deanna St. Germain, a physician trained in the medical examination of children alleged to have been sexually abused. Dr. St. Germain examined K.O. on July 23, 1997. She observed several injuries to K.O.'s rectal area that, as she explained at trial, are not typically found on children who have not been abused. Based on the types of injuries she observed, Dr. St. Germain opined that K.O. "suffered some type of an abnormal penetrating injury to her anus." On cross-examination, Dr. St. Germain testified that K.O. had a history of having been sexually abused around the age of two, but she "was not aware of what the sexual abuse was." Dr. St. Germain admitted that, assuming there was anal penetration at some point prior to the alleged sexual abuse on May 9 or 10, 1997, she would not be able to separate injuries sustained on those dates from the previous sexual abuse. Dr. St. Germain further explained, "[w]hen I do my examination, I am going to make an opinion of the physical findings and not of who did it when." After Dr. St. Germain finished her testimony, the State rested its case.

Rodriguez testified in his own defense and denied having sexually assaulted K.O. In addition, Rodriguez testified that he had personally observed K.O. tell lies in the past. Rodriguez also called as a defense witness Timothy James Lochhead, an administrative assistant in charge of discipline at K.O.'s grade school. Lochhead testified that, "like other children, [K.O.] has fabricated things from time to time, such as she didn't want to take a test or she didn't want to do this or that. Maybe her arm hurt or she had a stomach ache or was

tired, those types of things." On cross-examination, Lochhead conceded that "[i]t is not unusual" for children to engage in such fabrications, but he believed that K.O. "was quite frequent with her fabrications."

Finally, after the defense rested, the State introduced into evidence a certified copy of Rodriguez's prior conviction for theft. The jury was instructed that the prior conviction could be considered only for purposes of impeaching Rodriguez's veracity when testifying and not as proof of guilt.

Central to the present appeal, but not presented by either side during the trial, are two reports from the Illinois State Police's Division of Forensic Services analyzing four semen stains on a blanket from K.O.'s bed and comparing them to blood standards taken from Rodriguez and K.O. The first report concluded that no comparisons were possible due to the limited amounts of DNA found in the samples. The second report was issued on October 28, 1997, one day before Rodriguez's trial began. That report analyzed 12 samples taken from the four semen stains and concluded that eleven of the samples could not have come from Rodriguez, several reflected that they came from K.O. and several others were from a third, unknown donor. Neither Rodriguez nor K.O. could be excluded as having contributed to the mixture of DNA profiles detected in the twelfth sample; however, the report notes that this sample could have come from "approximately 1 in 2 Caucasians, 1 in 4 Blacks, and 1 in 2 Hispanics … ." Additionally, an unidentified profile was present in this mixture.

The sperm samples came up at trial for the first time during closing arguments. Approximately halfway through the State's closing argument, the prosecutor referenced D.O.'s testimony that, during a phone call with Rodriguez on May

11, he told her that he had been up all night doing laundry. The prosecutor then asked rhetorically: "Why would you wash clothes on a Sunday like that if you had washed them all night [*sic*]? It is a good reason [*sic*] to get rid of the evidence that way."

After the prosecutor concluded his closing argument and before defense counsel began his closing argument, the following exchange occurred in the presence of the jury:

> DEFENSE COUNSEL: Your Honor, one thing, and I am sure the [*sic*] counsel did not do this intentionally, but I would strongly object to his argument about washing the clothes, getting rid of the evidence. There was no evidence whatsoever as to the reason for washing those clothes and getting rid of evidence. In fact, counsel knows that there was sperm on various items that was not presented.

> PROSCUTOR: Objection, Your Honor. [Defense counsel] is testifying.

> DEFENSE COUNSEL: Your Honor, he opened the door.

> THE COURT: If you want to make an argument, make it to the jury.

> DEFENSE COUNSEL: That — you know, I —

> THE COURT: I already informed the jury that anything said by either attorney in final argument [that] is not based on the evidence or

>    the testimony, you are to disregard. With that
>    said, go ahead, [defense counsel].

Defense counsel then delivered his closing argument, in which he made no further mention of the sperm samples, DNA reports, or prosecutor's argument about Rodriguez staying up all night to do laundry.

The trial judge repeatedly instructed the jury that they were to consider only the evidence presented at trial and disregard any attorney comments during opening statements or closing arguments that were not based on that evidence. Before opening statements, the trial judge further explained to the jury that "opening statement is not evidence," and that "[t]he evidence will be the testimony you hear from the witness stand and any exhibits that are admitted into evidence." The trial judge returned to the subject before closing arguments, this time specifically instructing the jury that:

>    Final argument is not evidence. You have
>    heard the evidence, the testimony from the wit-
>    nesses and the exhibits that are admitted into
>    evidence. You are not to consider any statement
>    made by either attorney that is not backed up by
>    the evidence you heard here in the courtroom.

As noted above, the trial judge reminded the jury of this instruction after defense counsel mentioned the sperm evidence. And again, during jury instructions, the court reminded the jury, "[i]t [was] [their] duty to determine the facts, and to determine them only from the evidence in this case," and that "[t]he evidence which [they] should consider consists only of the testimony of the witnesses and the exhibits which the Court has received." The judge then delivered the

standard pattern instruction on opening statements and clos-
ing argument, which reads as follows:

> Opening statements are made by the attor-
> neys to acquaint you with the facts they expect
> to prove. Closing arguments are made by the at-
> torneys to discuss the facts and circumstances in
> the case and should be confined to the evidence
> and to reasonable inferences to be drawn from
> the evidence. Neither opening statement nor
> closing arguments are evidence, and any state-
> ment or argument made by the attorneys which
> is not based on the evidence should be disre-
> garded.

The jury reached its verdict quickly: it retired to deliberate
at 3:07 p.m. and at 3:55 p.m. returned a verdict finding Rodri-
guez guilty of two counts of predatory criminal sexual assault
of a child. The trial judge subsequently sentenced Rodriguez
to serve consecutive prison terms of 40 years and 20 years.

## II.

On direct appeal, Rodriguez argued, among other things,
that he was denied effective assistance of counsel due to his
trial counsel "mistakenly divulging highly damaging infor-
mation"—specifically, the comment about evidence of sperm
being found on "various items"—that the jury otherwise
would not have heard.

The Illinois Appellate Court evaluated Rodriguez's inef-
fective assistance of counsel claim under *Strickland*. The ap-
pellate court first found that counsel's impetuous comment
regarding the sperm samples amounted to deficient perfor-

mance, because "without explanation it permit[ted] an inference that more physical evidence supporting [Rodriguez's] guilt exist[ed]" than what the jury heard. The appellate court nevertheless denied relief, concluding that Rodriguez had not been prejudiced because there was no reasonable probability that the result of his trial would have been different absent the comment. According to the appellate court, "the evidence of [Rodriguez's] guilt was not close," as K.O.'s testimony regarding the sexual assault was "corroborat[ed]" and "bolstered" by the testimony of Nesler, who "testified that his May 21, 1997, interview with [K.O.] reflected the same account described by her trial testimony," and the testimony of Dr. St. Germain, who "confirmed that her examination of [K.O.] revealed that she suffered an abnormal penetrating injury to her anus" consistent with K.O.'s allegations. The appellate court further found that any harm caused by defense counsel's comment was mitigated by the trial judge's response to the remark. As the appellate court explained, "immediately after defense counsel's remark, the [trial] court reiterated that the jury was instructed to disregard closing-argument comments not based on the evidence presented." Thus, "a different outcome absent counsel's comments is not a reasonable probability." The Illinois Appellate Court thus affirmed Rodriguez's convictions. [1]

---

[1] The Illinois Appellate Court nonetheless vacated Rodriguez's sentences because the trial court entered them under the mistaken belief that consecutive sentences were mandatory. On remand, the trial court reimposed consecutive sentences totaling 60 years of imprisonment. Those sentences were affirmed in a subsequent direct appeal.

Rodriguez subsequently filed a petition for leave to appeal with the Illinois Supreme Court, raising the same ineffective assistance of counsel claim, which was denied. Then, on December 10, 2001, Rodriguez, through appointed counsel, filed a petition for postconviction relief. Among other issues, the petition asserted that trial counsel was ineffective for referencing the unpresented sperm evidence before the jury and that Rodriguez suffered prejudice as a result. On April 16, 2002, the circuit court denied Rodriguez's postconviction petition without opinion. On October 1, 2003, Rodriguez, through appointed counsel, filed his opening brief appealing the circuit court's denial of his postconviction petition, but the brief did not raise the issue of whether defense counsel was ineffective for referencing the unpresented sperm evidence in the presence of the jury.

Rodriguez's *pro se* federal habeas petition presented seven separate claims, including that his trial counsel was ineffective for divulging the sperm evidence to the jury. The district court denied relief on all claims. The district court denied relief on the basis of trial counsel's reference to the sperm sample evidence, holding that this claim did not meet the standards set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2254(d)(1). The district court also denied a number of Rodriguez's claims as procedurally defaulted because they were not presented in state court; the procedurally-defaulted claims included assertions that counsel was ineffective for "[f]ailing generally to investigate the case properly" and "[s]uppressing evidence from the jury." The district court granted a certificate of appealability for Rodriguez's claim regarding his trial counsel's reference to the sperm evidence; however, it did not grant a certificate of appealability as to any of the procedurally-defaulted claims.

## III.

We review the district court's decision to deny Rodriguez's habeas petition *de novo*, subject to the limitations of the AEDPA. *Pole v. Randolph*, 570 F.3d 922, 934–35 (7th Cir. 2009). We assume the state court's factual determinations are correct unless the petitioner rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Julian v. Bartley*, 495 F.3d 487, 492 (7th Cir. 2007).

Under the AEDPA, we may grant Rodriguez's habeas petition only if (1) the state court's adjudication of his claim was either contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) the state court's decision was based on an unreasonable determination of the facts given the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402–03, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision contradicts clearly established law if it applies a legal standard inconsistent with governing Supreme Court precedent or contradicts the Supreme Court's treatment of a materially identical set of facts. *Bell v. Cone*, 535 U.S. 685, 694, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Goodman v. Bertrand*, 467 F.3d 1022, 1026 (7th Cir. 2006). A state court unreasonably applies Supreme Court precedent if it identifies the correct legal rule but applies it in a way that is objectively unreasonable. *Yarborough v. Gentry*, 540 U.S. 1, 5, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003); *Gilbert v. Merchant*, 488 F.3d 780, 790 (7th Cir. 2007).

Rodriguez seeks habeas relief due to the purported ineffective assistance of his counsel. In *Strickland*, the Supreme Court established a two-part test for adjudicating ineffective assistance of counsel claims that requires a petitioner to show

(1) that counsel's performance was deficient, and (2) that the deficiency prejudiced his defense. *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S. Ct. 2527, 156 L. Ed. 2d. 471 (2003) (citing *Strickland*, 466 U.S. at 687). To establish deficiency, the petitioner must show that "counsel's representation 'fell below an objective standard of reasonableness.'" *Id.* at 521 (quoting *Strickland*, 466 U.S. at 688). To demonstrate prejudice, the petitioner "'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* at 534 (quoting *Strickland*, 466 U.S. at 694).

In the present case, the Illinois Appellate Court found that trial counsel's impetuous reference to the unpresented sperm evidence demonstrated that his performance was constitutionally deficient and thus the first requirement of the *Strickland* test was met. The State has not challenged that finding. Thus, in reviewing Rodriguez's habeas petition, we consider only the question of whether the Illinois Appellate Court unreasonably applied *Strickland* in concluding that he suffered no prejudice.

On this point, Rodriguez has a high hurdle to clear. An "unreasonable application" under the AEDPA is one that is "not only erroneous, but objectively unreasonable." *Yarborough*, 540 U.S. at 5. In other words, it must be "'something like lying well outside the boundaries of permissible differences of opinion.'" *Jackson v. Frank*, 348 F.3d 658, 662 (7th Cir. 2003) (quoting *Hardaway v. Young*, 320 F.3d 757, 762 (7th Cir. 2002)). A habeas petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well under-

stood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011). Furthermore, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004)).

Under this highly-deferential standard of review, we cannot find that the Illinois Appellate Court erred in concluding that Rodriguez failed to establish a reasonable probability that, but for his counsel's unprofessional errors, the result of his proceeding would have been different. As recognized by that court, the jury heard testimony from K.O. describing how Rodriguez twice got into bed with her and placed his penis in her anus. The State corroborated this testimony with Nesler's testimony regarding the victim's prior consistent statements, as well as Dr. St. Germain's testimony regarding injuries to K.O.'s anus. Rodriguez nonetheless attacks the strength of the State's case, describing it as resting on "a troubled child's testimony and a medical report detailing that there had been an injury to her anus at some unknown point in her life." This argument at its core presents a credibility challenge. But the jury was able to observe the demeanors of both K.O. and Rodriguez while they testified—and also was entitled to draw negative conclusions concerning Rodriguez's credibility based on his theft conviction—in deciding which version of events to believe. Given the sum total of the evidence against him, the Illinois Appellate Court was not unreasonable to find that Rodriguez would have been convicted notwithstanding his counsel's outburst.

This conclusion is further supported by the several limiting instructions given by the trial judge. The trial judge instructed the jury before closing arguments that it should not consider in its deliberations any statement made by either attorney that was not supported by the evidence. The trial judge then reminded the jury of this instruction after defense counsel made reference to the sperm evidence that had not been admitted, and repeated the admonition twice during jury instructions. The multiple warnings to the jury not to consider any statement by the attorneys that was not supported by record evidence bolster our view that the Illinois Appellate Court was not unreasonable in finding that counsel's reference to the sperm evidence did not prejudice Rodriguez. After all, "[w]e normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions … and a strong likelihood that the effect of the evidence would be devastating to the defendant." *Greer v. Miller*, 483 U.S 756, 766 n.8, 107 S. Ct. 3102, 97 L. Ed. 2d 618 (1987) (internal quotation marks omitted).

Rodriguez contends that his trial counsel's improper reference to the sperm evidence is precisely the type of occurrence that should be excepted from the general rule discussed in *Greer*, and he cites various cases in which we evinced skepticism that limiting instructions were sufficient to ameliorate prejudicial evidence or statements. But the isolated and indirect nature of Rodriguez's counsel's blunder, taken together with the trial judge's curative instructions, distinguishes this case from those upon which Rodriguez relies.

For example, in *Maus v. Baker*, 747 F.3d 926 (7th Cir. 2014), we reversed a jury verdict against an imprisoned plaintiff in a case under 42 U.S.C. § 1983, where the district court forced the plaintiff to appear in front of the jury in shackles and his prisoner uniform while the defendants were allowed to wear their law enforcement uniforms. *Id.* at 926–27. Notably, the trial judge in *Maus* did not give a limiting instruction; we nonetheless acknowledged that a limiting instruction might not have been enough under those circumstances to remedy the potential for prejudice. *Id.* at 928 (citing *Estelle v. Williams*, 425 U.S. 501, 504–05, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976)). In *United States v. Ciesiolka*, 614 F.3d 347 (7th Cir. 2010), we reversed the conviction of a criminal defendant where we found that a single *pro forma* limiting instruction might not have been sufficient to ameliorate the prejudice from evidence of other bad acts that the government used to prove intent—specifically, over 100 images of child pornography belonging to the defendant, as well as testimony of a woman who had sex with the defendant when she was 15 years old. *Id.* at 358. In *United States v. Vance*, 764 F.3d 667 (7th Cir. 2014), we expressed the view that "there are grounds for skepticism about [the] efficacy [of limiting instructions] in preventing juries" from making improper inferences. *Id.* at 671. But the appellant in *Vance* did not challenge the limiting instructions given by the trial judge and the objectionable evidence adduced in that case—evidence of the criminal defendant's participation in three restaurant robberies to establish his identity in a subsequent bank robbery—was directly presented to the jury and had the potential to be extremely prejudicial. *Id.* at 669. Finally, in *Hawkins v. Mitchell*, 756 F.3d 983 (7th Cir. 2014), we ordered a retrial on petitioner's excessive force and willful-

and-wanton battery claims where defense counsel made comments in their closing statement that "overwhelmingly misled" the jury, thus creating substantial prejudice and "the court did not intervene specifically with regard to those [statements]." *Id.*

In *Maus*, *Ciesiolka*, and *Vance*, we acknowledged that some subject matter presented to the jury may be too self-evidently prejudicial for a limiting instruction to cure; in *Hawkins*, we concluded that misleading arguments to the jury should have been cured with a specific limiting instruction. Neither of those situations is before us here. In contrast with the inflammatory evidence addressed in *Maus*, *Ciesiolka*, and *Vance*, Rodriguez's counsel's reference to the unadmitted sperm evidence was brief in nature—a few words during an objection to the State's closing argument. Furthermore, it was ambiguous—as the Illinois Appellate Court noted, the statement *permitted* an inference that there was physical evidence supporting Rodriguez's guilt but did not *mandate* such an inference. Counsel's brief allusion to evidence that the jury had not otherwise seen or heard did not create an overwhelming probability that the jury would disobey the trial court's instructions; and trial counsel's statement, referring to evidence of unclear origin and import, is not of the sort that would irremediably prejudice the jury. *See Greer*, 483 U.S. at 766 n.8. Furthermore, here, unlike in *Hawkins*, the curative instruction was repeated multiple times after defense counsel misspoke. Thus, we must presume that the jury followed the trial court's instruction while deliberating.

Finally, Rodriguez makes various arguments to the effect that the DNA reports associated with the sperm samples were

actually exculpatory in nature, and thus, once his counsel divulged their existence to the jury, he provided ineffective assistance by not seeking to introduce them into evidence. However, Rodriguez did not raise that argument before the district court and thus it has been waived. *See Estremera v. United States*, 442 F.3d 580, 587 (7th Cir. 2006). ("It is well settled that 'arguments not raised in the district court are waived on appeal.'") (quoting *Belom v. Nat'l Futures Ass'n*, 284 F.3d 795, 799 (7th Cir. 2002)). Furthermore, the district court found that Rodriguez's claims that his trial lawyer was ineffective for "[f]ailing generally to investigate the case properly" and "[s]uppressing evidence from the jury" were procedurally defaulted. The district court did not issue a certificate of appealability from those findings, and Rodriguez did not appeal that decision. Accordingly, to the extent those claims may be construed as raising the issue of whether Rodriguez's trial counsel was ineffective by failing to introduce into evidence purportedly exculpatory DNA reports, that issue has not been properly raised before us.

## IV.

In light of the evidence against Rodriguez and the trial judge's curative instructions, it was not unreasonable for the Illinois Appellate Court to conclude that Rodriguez had not shown that he was prejudiced by his counsel's errant remark in front of the jury. Accordingly, we AFFIRM the denial of Rodriguez's habeas petition.