In the

# United States Court of Appeals
## For the Seventh Circuit

No. 15-3865

DOUGLAS G. HICKS,

*Petitioner-Appellant,*

*v.*

RANDALL HEPP,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:13-cv-01325 — **William E. Duffin**, *Magistrate Judge.*

ARGUED DECEMBER 9, 2016 — DECIDED SEPTEMBER 7, 2017

Before WILLIAMS and HAMILTON, *Circuit Judges*, and
CHANG, *District Judge.*[*]

WILLIAMS, *Circuit Judge*. Douglas Hicks admitted to sexually molesting his victim, a former step-son, during a recorded phone call from a police station. During the call, and

---

[*] Of the Northern District of Illinois, sitting by designation.

before the confession, the victim repeatedly threatened to harm Hicks and to tell Hicks's other minor son about the abuse. Ultimately, Hicks was charged with sexually molesting the victim and tried by a jury. At trial, Hicks's counsel played the entire 43-minute recorded conversation to the jury. Later, during the state's rebuttal argument, the prosecutor referred to an earlier case in which Hicks had pleaded guilty after being accused of engaging in similar conduct. He asked the jury if it was "fair" that Hicks had been permitted to "plea bargain[]" down his felony charges to misdemeanors and receive probation as punishment. And then, he asked the jury, "Is that what should have happened here or should we deal with this case?" Hicks's trial counsel did not object to this clearly improper argument.

The jury returned a verdict of guilty and Hicks was sentenced to 25 years' imprisonment. After a failed collateral challenge to his conviction in state court, he filed a petition for habeas relief pursuant to 28 U.S.C. § 2254 in federal court. The district court denied relief, and Hicks now appeals. On appeal he contends that the state court erred when it found that his counsel's failure to move to suppress the recorded conversations, in which he confessed to the crime, did not constitute ineffective assistance of counsel. While we find that the state court unreasonably determined that Hicks's trial counsel was credible when he testified that Hicks told him that he did not feel threatened during the call, we nonetheless find that Hicks did not suffer prejudice from the tape's admission, because the other evidence of his guilt was sufficient to sustain his conviction.

Hicks also alleges that it was unreasonable for the state court to conclude that his counsel's decision not to object during rebuttal was a strategic trial decision. We agree with Hicks that these statements were improper, and are very troubled by the state court's finding on the issue. Nonetheless, because Hicks did not fairly present this claim to the Wisconsin Supreme Court in his petition for review, we find that he has procedurally defaulted on this claim for relief. As a consequence, we cannot reach the merits of this claim and affirm the district court's denial of habeas relief.

## I.   BACKGROUND

In April 2005, a 22 year-old-man named E.J. reported to police that he had been sexually molested as a child by his former stepfather, Douglas Hicks ("Hicks"). E.J. stated that the sexual abuse began in 1996 when he was only 11 years old and continued until 1999. In total, there were 100 to 120 separate incidents of sexual abuse. Almost a year after first reporting the abuse to police, E.J. worked with Investigator Dale Janus of the Oconto County Sheriff's Department to obtain a confession from Hicks. At Investigator Janus's suggestion, E.J. agreed to a one-party consent taped phone call.

On February 6, 2006, E.J. telephoned Hicks from the Oconto County Sheriff's station. Before placing the call, Investigator Janus provided E.J. with guidance on how to get Hicks to make an incriminating statement. While Investigator Janus told E.J. to take a softer approach with Hicks on the phone, he also stated that "there wasn't anything he could really say wrong. Whatever [E.J.] felt he needed to say was okay." R. 17-

15 at 26.[1] After providing these instructions, Investigator Janus both listened to and recorded the conversation.

Hicks answered the phone while he was driving a company car with a new employee that he was training. The call lasted 43 minutes and was the first time that E.J. had confronted Hicks about the abuse. During the call, E.J. made various attempts to get Hicks to admit to the abuse. These attempts included making a number of threats including: threats of death or bodily injury, general threats regarding negative consequences, threats to go to the police, and threats of continued harassment. While Hicks tried to end the call a number of times, he never did. And, while he generally denied the abuse, he also asked if they could discuss the issue in person, and made other statements that suggested E.J.'s allegations were true.

Towards the end of the call, E.J. changed his approach and made a reference to Hicks's minor son, A.H., who was E.J.'s step brother—born to Hicks and Wendy Lambert, E.J.'s mother. Although no longer married, Hicks and Lambert shared custody of A.H. During the call, E.J. threatened to tell A.H. about the abuse he endured at Hicks's hands. After making this threat, the following exchange occurred:

> **E.J.**: All you need to do is say you're sorry. Say you're sorry and we can all go back to this being like normal and you will never hear from me again and there'll never be any more problems like this, and I'll play ball with it and keep

---

[1] All record citations are to the record in the United States District Court for the Eastern District of Wisconsin.

things the way you want them whenever another investigation like this pops up because I'm sure there's you know more children that you want to molest.

**Hicks**: E.J., I am sorry.

**E.J.**: You're sorry for what, come on, go forward, you're sorry for what.

**Hicks**: Just, you just told me to say it, I'm sorry.

**E.J.**: No say I'm sorry for sexually molesting you. This isn't going to end until you reach that point. We got the sorry part out now we just need to end the sexually molesting me part.

**Hicks**: That's going to keep you from uh, trying to upend, upend on [my son].

**E.J.**: Yes it will if you want to see your child again, if you don't want him to ever know about this you're going to say it. You're going to say E.J. I'm sorry for sexually molesting you.

**Hicks**: E.J., I'm sorry for molesting you.

R. 23-1 at 20–21.

Several weeks after the recorded conversation, Hicks met with Investigator Janus. During that meeting, Hicks denied ever sexually molesting E.J. When told of the recording, Hicks stated that he had felt threatened by E.J. and only admitted to abusing E.J. because he felt threatened. In June 2016, Hicks was charged with the repeated sexual assault of E.J., in violation of Wis. Stat. § 948.025(1).

### A. Pretrial Proceedings

Hicks retained Attorneys K. Richard Wells and Gerald Boyle, members of the same firm, as trial counsel. Before trial, the government asked the court to hold a *Miranda-Goodchild* hearing to determine the admissibility of Hicks's recorded statements.[2] Hicks's counsel did not object to the hearing. Rather, Wells stated on the record that he agreed with the procedure "[a]lthough we're not really challenging the statements and its (sic) voluntariness." R. 17-12 at 4. Nonetheless, Wells believed that they "need[ed] to make a record about it." *Id.*

The court held the *Miranda-Goodchild* hearing. During the hearing, Investigator Janus testified about his investigation and the recording he made of E.J. and Hicks's conversation. Wells neither offered evidence nor made any argument on Hicks's behalf. At the end of the hearing, the court concluded that under the totality of the circumstances, Hicks's statements were voluntary and therefore, admissible at trial.

### B. Hicks's Criminal Trial

In March 2007, Hicks, represented by Wells and Boyle, was tried before a jury. At trial, the government's first two witnesses were brothers who had also been molested by Hicks as children. The court admitted their testimony for the sole purpose of establishing Hicks's motive. Each brother detailed

---

[2] A *Miranda-Goodchild* hearing is conducted to determine the admissibility of confessions, *see State v. Jiles*, 663 N.W.2d 798, 806–07 (Wis. 2003) (discussing the purpose of a *Miranda-Goodchild* hearing), and is named after *Miranda v. Arizona*, 384 U.S. 436 (1966) and *State ex rel. Goodchild v. Burke* 133 N.W.2d 753 (Wis. 1965).

how the abuse occurred. Though Hicks was prosecuted on felony charges for these sexual assaults, that trial resulted in a hung jury. Ultimately, Hicks entered an *Alford*[3] plea to two reduced misdemeanor charges related to the charged conduct: the intent to contribute to the delinquency of a minor and exposing one's genitals to a child. As a result, Hicks was sentenced to probation, which was eventually revoked for reasons not in the record, and Hicks served six months in jail.

The government also called E.J. to testify. He gave the jury a graphic account of the repeated abuse, providing vivid detail about three specific incidents. These details included where in the house the abuse occurred, who else was present in the home, what movies he was watching prior to the abuse, and the nature of the sexual acts that Hicks performed on him and those he was forced to perform on Hicks. Although he only provided this level of detail with regards to three incidents, he testified that there were approximately 100 to 120 separate incidents of abuse over a three-year period, occurring on an almost weekly basis.

On direct examination, E.J. also testified about the recorded telephone conversation he had with Hicks. He acknowledged that the call was an angry one, in which he thought the best way to get Hicks to admit to the abuse was to "push him." R. 17-14 at 12. He also acknowledged making threats on the call. *Id*. Before cross examination of E.J., the defense played the entirety of the 43-minute recorded conversation for the purpose of "completeness." Later, the prosecution

---

[3] An *Alford* plea allows a criminal defendant to enter a guilty plea while maintaining his innocence, as approved by the Supreme Court in *North Carolina v. Alford*, 400 U.S. 25 (1970).

called Investigator Janus, who testified about and recounted portions of the recorded conversation from the stand.

Lambert, Hicks's ex-wife, also testified for the prosecution. She first learned about the abuse in April 2005 around the time that E.J. reported it to the police. Almost a year later, in February 2006, she confronted Hicks as part of Investigator Janus's investigation. After she confronted him, Hicks admitted to abusing E.J. But, he also provided an excuse: his actions were the result of the sexual abuse he had both experienced and witnessed as a child. After this conversation, Hicks called Lambert two more times to apologize and to attempt to speak to E.J. in hopes that he might drop the allegations.

After the prosecution rested, Hicks testified in his own defense. He addressed the brothers' statements that he had sexually assaulted them when they were children. While he admitted that he had been charged with two felonies as a result of their allegations, he reiterated that the felony trial had ended in a hung jury. Because he had wanted to vindicate his name, Hicks reluctantly entered into the *Alford* plea.

Hicks addressed the recording in which he confessed to sexually molesting E.J. He stated that he found the conversation "shocking," but once E.J. threatened to take his allegations to his son A.H., "that was it. I told him what he wanted to hear. I asked him what he wanted to hear, and I told him what he wanted to hear." R. 17-15. at 166, 172.

During closing arguments, Wells urged the jury not to credit Hicks's confession on the tape, arguing, "What you heard in that tape is what went down. It was threatening. It was mean spirited. It was horrible. And there were multiple

denials of anything by Mr. Hicks." R. 17-16 at 89. He also reminded the jury that it could consider the testimony of the two brothers only for the purpose of motive, not as evidence of Hicks's guilt in the instant case.

However, during its rebuttal argument, the prosecution made a very explicit reference to the previous charges that Hicks faced. After referring to Hicks's *Alford* plea, the prosecutor stated, "And was that a fair resolution what happened? Plea bargaining it down to a couple of misdemeanors. Is that what should have happened here or should we deal with this case?" *Id.* at 108. The prosecutor concluded by asking the jury to "judge [Hicks] on his words … [E.J.] I'm sorry for molesting you." *Id.* at 111–12.

During deliberations, the jury submitted a question, asking the court to reveal why Hicks's probation in his previous case had been revoked. The court declined to answer the question, noting that there was no evidence placed on the record as to why. Later that day, the jury found Hicks guilty of the repeated sexual assault of E.J. He was sentenced to 25 years in prison, which he is currently serving.

### C. Post-Conviction Hearing in Wisconsin Trial Court

Hicks moved for post-conviction relief in the Wisconsin trial court.[4] He challenged the admissibility of the recorded conversation and alleged that his counsel was ineffective for failing to object to: (1) the admission of the recorded statement; and (2) the prosecutor's closing argument regarding his

---

[4] Wisconsin law requires that a defendant pursue a "motion for post-conviction or postdisposition relief" in the trial court before filing the direct appeal if the basis for relief was not previously raised. Wis. Stat. § 809.30(h).

*Alford* plea. Wells testified at a post-conviction hearing held pursuant to *State v. Machner*, 285 N.W.2d 905 (Wis. App. Ct. 1979) (holding that, as a prerequisite to a claim of ineffective assistance of trial counsel, subsequent counsel must require trial counsel's presence and testimony at the hearing in which his or her conduct is challenged). Although Wells testified that E.J. made approximately 20 threats to Hicks on the recording, he believed that the telephone conversation was "totally voluntary" and that Hicks could have ended the call at any time. R. 23-2 at 11. Wells also testified that Hicks told him that despite the threats, he did not feel coerced, pressured, or intimidated in any way.

Yet, Wells's memory of facts about the trial was contradicted by the record. The record reflected that Wells delivered both the opening and closing statements and examinations of the witnesses, but he testified at the *Machner* hearing that he and Boyle shared the witnesses. He also testified that Boyle delivered both the opening and closing statements.

Hicks testified at the *Machner* hearing and denied ever telling his trial counsel that he did not feel threatened by E.J. Rather, he testified that he had explicitly told trial counsel that he felt threatened by E.J. and that E.J.'s threats to tell A.H. were what ultimately caused him to give E.J. the apology he demanded.

After the hearing, the trial court concluded that the statements made in the recording were voluntary and that Wells's decision not to object to the prosecutor's closing argument was a reasonable strategic decision. The court, therefore, denied Hicks's request for a new trial.

### D.  Hicks's First State Appeal (*Hicks I*)

Hicks appealed his two ineffective assistance of counsel claims to the Wisconsin Court of Appeals. While the appellate court found that the prosecutor's statements about Hicks's *Alford* plea were improper, it agreed with the trial court that Wells's decision not to object was a reasonable strategic decision.

However, the appellate court disagreed with the trial court's determination that Hicks's statements on the phone call were admissible and its conclusion that Wells's failure to object to their admissibility did not constitute the ineffective assistance of counsel. Rather, the appellate court determined that E.J. was acting as a police agent during the call. As a police agent, E.J. made "impermissible threats of physical harm and psychological intimidation … threats that no police officer would be allowed to make in order to secure incriminating statements." R. 17-5 at 4. Therefore, the appellate court remanded the case to the trial court to determine whether the statements were voluntary pursuant to *State v. Clappes*, 401 N.W.2d 759 (Wis. 1987) (applying the totality of the circumstances analysis to determine whether a confession is voluntary).

On remand, the trial court held a hearing to determine whether the statements were made voluntarily. At that hearing, Hicks testified about specific incidents of harassment and a job loss that he experienced as a result of his previous case. Based upon this experience, Hicks testified that he knew he could "lose it all again" if E.J. simply took his claims to the police. R. 17-9 at 6. Nonetheless, the trial court, determined that under the totality of the circumstances, Hicks' statements were the "product of free and unconstrained will, reflecting

deliberateness of choice" and were, therefore, voluntary and admissible at trial.

### E. Hicks's Second State Appeal (*Hicks II*)

Hicks once more appealed the trial court's determination that the statements were voluntary to the Wisconsin Court of Appeals, which affirmed. The appellate court found that because Hicks did not know that E.J. was a police agent, there was "simply no pressure to comply with police authority." R. 17-19 at 9. Further, the appellate court concluded that E.J.'s threat to tell A.H. about the abuse was not coercive. In fact, the court viewed this specific threat as the "least problematic." *Id.* at 10. If the allegations were false, the appellate court concluded that they carried no coercive weight. But if they were true, then the threat to report was not "impermissibly coercive in a constitutional sense." *Id.* To reach these conclusions, the appellate court credited Wells's testimony over that of Hicks.

Lastly, the appellate court addressed Hicks's state-law claim that a new trial was warranted in the "interest of justice" because of the prosecutor's improper closing argument. The troubling statements comprised only three sentences in an 11-page closing argument, which the jury was instructed it could not consider as evidence. Therefore, based upon the totality of the evidence, the appellate court was "satisfied that the real controversy—assessing the credibility of the accuser and accused—was fully tried in this case." *Id.* at 12.

### F. Hicks's Petition for Review with the Wisconsin Supreme Court

In January 2013, Hicks, who was represented by counsel, filed a petition for review with the Wisconsin Supreme Court.

He listed four issues. The first two related to the appellate court's determination that the statements were voluntary and, therefore, admissible at trial. The third issue asked the court to address his state-law claim that he was entitled to a new trial because the prosecutor's improper comments prevented the real controversy from being tried.

In his fourth issue, Hicks raised his ineffective assistance of counsel claim based upon Wells's failure to object to the prosecutor's improper argument. On that issue, he asked the court to determine whether "trial counsel's failure to object to the prosecutor's improper closing arguments constitute[d] ineffective assistance of counsel." R. 17-10 at 5. While he provided no argument, after discussing the prosecutor's improper argument in the section of the petition entitled, "Reasons for Granting Review," he stated:

> The petitioner recognizes the legal standards on this issue are clearly developed, and therefore, this issue would likely not justify review independently absent the other issue raised, pursuant to the standards set by Wis. Stat. § 809.62. Hicks must nonetheless raise these claims here to preserve them for federal habeas review. *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999).

*Id.* at 7. He also seemingly mentioned the claim in the last sentence in his argument addressing his state-law claim based upon the prosecution's closing arguments. There he stated, "[l]ikewise, counsel's decision not to object was not a reasonable strategic decision." *Id.* at 27.

On March 13, 2013, the Wisconsin Supreme Court denied Hicks's petition for review.

### G.  Hicks's Federal § 2254 Petition

Hicks filed a *pro se* petition for a writ of habeas corpus on November 22, 2013 in the United States District Court of the Eastern District of Wisconsin.[5] In his petition, he raised two grounds for relief. First, he contended that his trial counsel rendered ineffective assistance of counsel by failing to challenge pre-trial, the admissibility of the recorded conversation. Second, he asserted that his trial counsel was ineffective for failing to object to the prosecutor's improper statements during closing.

While the district court concluded that the Wisconsin Court of Appeals made an unreasonable determination of fact when it concluded that Wells's testimony was more credible than Hicks's, it nonetheless denied the writ, finding that Hicks was not prejudiced by Wells's failure to move to suppress the statements. The district court also held that because Hicks had not adequately presented his second ineffective assistance of counsel claim in his petition to the Wisconsin Supreme Court, the doctrine of procedural default barred its review.

The district court issued a certificate of appealability for both issues and this appeal followed.

## II.  ANALYSIS

Our review is governed (and greatly limited) by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See, e.g.*, *Harper v. Brown*, No. 15-2276, 2017 WL 3224907, at *2

---

[5] Both parties consented to magistrate jurisdiction pursuant to 28 U.S.C. § 636(c) and the case was assigned to and decided by Magistrate Judge William E. Duffin.

(7th Cir. July 31, 2017) (noting that AEDPA provides a "de-manding standard" that must be met before a petitioner may receive relief). In enacting AEDPA, Congress modified a federal court's role in reviewing state court convictions to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Therefore, AEDPA establishes a deferential standard, *see, e.g., Stechauner v. Smith*, 852 F.3d 708, 714 (7th Cir. 2017), and we will not lightly conclude that habeas relief is necessary. *Burt v. Titlow*, 134 S. Ct. 10, 16 (2013); *see also Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) ("If this standard is difficult to meet, that is because it was meant to be.").

Pursuant to the statute, when a state court has adjudicated a claim on the merits, AEDPA permits a federal court to issue a writ of habeas corpus in only two situations. *See* 28 U.S.C. § 2254(d). First, a writ may issue if the petitioner establishes that the state-court decision was "contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States … ." § 2254(d)(1). A decision "contradicts clearly established law if it applies a legal standard inconsistent with governing Supreme Court precedent or contradicts the Supreme Court's treatment of a materially identical set of facts." *Rodriguez v. Gossett*, 842 F.3d 531, 537 (7th Cir. 2016) (citing *Bell*, 535 U.S. at 694).

Unreasonable application of clearly established law occurs if a state court identifies the correct legal rule, yet applies it in an objectively unreasonable manner. *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003)). This requires that the state court

do more than just get it wrong; "even clear error will not suffice." *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2014)) (internal quotation marks omitted). This is a high burden and a petitioner must "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011)) (internal quotation mark omitted).

Second, a writ may issue if the petitioner establishes that the state-court decision was "based on an unreasonable determination of the facts in light of the evidence in the State court proceeding." § 2254(d)(2). A finding of fact, however, is not unreasonable simply because a federal habeas court would have reached a different conclusion. *Burt*, 134 S. Ct. at 15 (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). Rather, a petitioner must rebut the state court's factual findings by "clear and convincing evidence." *Id.* at 299 (quoting § 2254(e)(1)); *see also Pole v. Randolph*, 570 F.3d 922, 934 (7th Cir. 2009) (noting that a state court's factual findings are presumed to be correct, unless the petitioner "rebuts them with clear and convincing evidence.").

We review a district court's denial of habeas relief *de novo*, and its factual findings for clear error. *Barrow v. Uchtman*, 398 F.3d 597, 602 (7th Cir. 2005). Additionally, our review is of the decisions of the highest state court to address the claims on their merits, *Stechauner*, 852 F.3d at 714 (quoting *Harris v Thompson*, 698 F.3d 609, 623 (7th Cir. 2012)), here *Hicks I* and *II.*

### A. Hicks's Ineffective Assistance of Counsel Claims

Hicks's petition advances two ineffective assistance of counsel claims.[6] Hicks's claims are governed by the well-established principles that the Supreme Court articulated in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*'s two-prong standard, to assert a successful claim of ineffective assistance of counsel, a petitioner must first demonstrate that counsel's performance was deficient. *Smith v. Brown*, 764 F.3d 790, 795 (7th Cir. 2014). This requires that the petitioner demonstrate that counsel's representation fell below an objective standard of reasonableness. *See Barrow*, 398 F.3d at 603 (noting that a petitioner "must show that the performance of counsel fell outside the range of competence demanded of attorneys in criminal cases—i.e., that it fell below an objective standard of reasonableness.") (quoting *Strickland*, 466 U.S. at 687–88) (internal quotation marks omitted).

What is objectively reasonable is determined by the prevailing professional norms. *Pole*, 570 F.3d at 934. At the same time, there is "significant latitude for permissible attorney conduct," *Mosley v. Atchison*, 689 F.3d 838, 847–48 (7th Cir. 2012), and we presume, "under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quoting *Strickland*, 466 U.S. at 689) (internal quotation mark omitted). This is a highly deferential inquiry; "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable

---

[6] Although articulated as two separate claims, which we will address in turn, "ineffective assistance of counsel is a single ground for relief no matter how many failings the lawyer may have displayed." *Pole*, 570 F.3d at 934 (quoting *Peoples v. United States*, 403 F.3d 844, 848 (7th Cir. 2005)) (internal quotation marks omitted).

professional judgment." *Strickland*, 466 U.S. at 690; *see also Mosley*, 689 F.3d. at 848 ("To avoid the inevitable temptation to evaluate a lawyer's performance through the distorting lens of hindsight, *Strickland* establishes a deferential presumption that strategic judgments made by defense counsel are reasonable.").

Second, a petitioner must demonstrate that counsel's deficient performance prejudiced his defense. *Stitts v. Wilson*, 713 F.3d 887, 891 (7th Cir. 2013). This requires the petitioner to demonstrate a "reasonable probability that, but for counsel's unprofessional errors," the outcome would have been different. *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citation omitted). If the error had no effect on the final judgment, then relief is not warranted, as the Sixth Amendment's "guarantee of counsel is to ensure that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland*, 466 U.S. at 691–92.

A petitioner who seeks habeas relief due to the ineffective assistance of counsel faces a high hurdle. The Supreme Court has instructed that under these circumstances, we must employ a "doubly deferential" standard, one which "gives both the state court and the defense attorney the benefit of the doubt." *Burt*, 134 S. Ct. at 13 (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)). And, as *Strickland* provides "a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles*, 556 U.S. at 123.

### 1. Failure to File Motion to Suppress Recorded Conversation

Hicks asserts that Wells rendered ineffective assistance of counsel by failing to move to suppress the recorded conversation in which he confessed to molesting E.J. The State urges us to conclude that Hicks did not assert this claim in his petition before the Wisconsin Supreme Court, and therefore, the doctrine of procedural default precludes us from reaching its merits. But, by defending this claim on the merits to the district court, while simultaneously arguing to the district court that Hicks had procedurally defaulted on his second claim, the State implicitly waived the defense of procedural default. *See Perruquet v. Briley*, 390 F.3d 505, 516 (7th Cir. 2004) ("where the State has responded to one habeas claim on its merits while asserting that another is procedurally barred, it has implicitly waived any contention that the first claim is also procedurally defaulted."). Therefore, we will address this claim on the merits.

To successfully advance a claim of ineffective assistance of counsel based upon the failure to file a motion to suppress, a petitioner must demonstrate that "there was both a reasonable probability that he would have prevailed on the motion to suppress and a reasonable probability that, if his confessions were suppressed, he would have been acquitted." *Bynum v. Lemmon*, 560 F.3d 678, 685 (7th Cir. 2009) (citing *Strickland*, 466 U.S. at 694); *see also United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir. 2005) ("When the claim of ineffective assistance is based on counsel's failure to present a motion to suppress, we have required that a defendant prove that the motion was meritorious.").

### a.  The State Court Unreasonably Determined There was No Impermissible Coercion

"A foundational principle of due process of law is that the state cannot procure a criminal conviction through the use of an involuntary confession." *Carrion v. Butler*, 835 F.3d 764, 775 (7th Cir. 2016) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 223–26 (1973)); *see also United States v. Vallar*, 635 F.3d 271, 282 (7th Cir. 2011). A confession is voluntary if "it is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will." *Vallar*, 635 F.3d at 282 (quoting *United States v. Gillaum*, 372 F.3d 848, 856–57 (7th Cir. 2004)) (internal quotation marks omitted). To determine whether a confession is voluntary, the court must analyze "the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation." *Schneckloth*, 412 U.S. at 226; *see also Murdock v. Dorethy*, 846 F.3d 203, 209 (7th Cir. 2017). Further, "coercive police activity is a necessary predicate to the finding that a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment." *United States v. Sturdivant*, 796 F.3d 690, 695 (7th Cir. 2015) (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)) (internal quotation marks omitted).

We evaluate coercion from the perspective of a reasonable person in the suspect's position. *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001). In doing so, we consider "the defendant's age, education, intelligence level, and mental state; the length of the defendant's detention; the nature of the interrogations; the inclusion of advice about constitutional

rights; and the use of physical punishment, including depri-
vation of food or sleep." *Sturdivant*, 796 F.3d at 695 (quoting
*Huerta*, 239 F.3d at 871) (internal quotation marks omitted).

Hicks argues that the state court erred when it determined
that he did not feel threatened by E.J. during the call. The Wis-
consin Appellate Court cited to only state court decisions
when it evaluated whether Hicks's confession was voluntary.
*See* R. 17-9 at 8–9. But, this is of no impact to our reasoning
because, in doing so, the Wisconsin Appellate Court applied
the same totality of the circumstances test that applies when
evaluating whether a Due Process Clause violation occurred.
*See, e.g., State v. Clappes*, 401 N.W.2d 759, 766 (Wis. 1987) (not-
ing that the court must evaluate the totality of the circum-
stances to determine whether a confession is voluntary by
"balanc[ing] the personal characteristics of the defendant
against the pressures imposed upon him by police in order to
induce him to respond to the questioning."). In *Hicks I*, the
state appellate court noted that E.J. "applied impermissible
threats of physical harm and psychological intimidation. He
made threats that no police officer would be allowed to make
in order to secure incriminating statements." R. 17-5 at 4.

The petitioner argues at length that the Wisconsin Court
of Appeals erred in *Hicks II* when it determined that that E.J.'s
threat to take his allegations to A.H. was not impermissibly
coercive. "[T]hreats to a suspect's family or children, even if
implicit, certainly may render confessions involuntary," *Sorn-
berger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1023 (7th Cir. 2006)
(citing *Lynumn v. Illinois*, 372 U.S. 528, 533 (1963)). In *Lynumn*,
the Supreme Court found that the defendant's confession was
involuntary when it was made "only after the police had told
her that state financial aid for her infant children would be cut

off, and her children taken from her, if she did not 'cooperate.'" *Lynumn*, 372 U.S. at 534. While we agree with Hicks that the appellate court seemingly ignored his prior experience with law enforcement when he faced the earlier charges, we are not persuaded that the court *unreasonably applied* federal law when it concluded these threats were not impermissibly coercive. But, as we will discuss below, this does not foreclose our finding that Hicks has established the first *Strickland* prong.

In *Hicks II*, the appellate court concluded that Hicks's statements were made voluntarily. *See* R. 17-9 at 11. To do so, the appellate court accepted Wells's testimony over Hicks's testimony regarding whether he felt threatened by E.J. It further noted that "[i]f the trial court had concluded that Hicks actually felt threatened by the numerous threats of physical violence, it would have been compelled to conclude Hicks's statements were involuntary." *Id.* at 9 n.2. We find the appellate court's conclusion in *Hicks II* that Wells's testimony was more credible than Hicks's problematic, as it is rebutted by clear and convincing evidence: the transcript from trial.

Wells testified at the *Machner* hearing that his role during trial was somewhat limited. He stated that he delivered neither the opening statement nor the closing argument. He also testified that he split the witnesses with Boyle. But, the record reflects the opposite. Instead, what the trial transcript reveals is that Wells delivered *both* the opening and closing statements and handled all of the witnesses. In light of the patently false testimony that Wells provided about readily verifiable facts, it was unreasonable for the state court to credit his testimony over that of Hicks. Moreover, as the district court noted, Wells's testimony that Hicks told him he did not feel

threatened by E.J. stands in contradiction to his actions at trial. If he knew that Hicks did not feel threatened by E.J., then Wells allowed Hicks to perjure himself on the stand when he testified to the contrary. *See* R. 17-15 at 165–66 (asking Hicks if he heard E.J. threatening him and whether he felt threatened, to which Hicks responded, "Yes."). Additionally, if he knew that Hicks did not feel threatened, soliciting this information on the stand would have flown in the face of Wells's theory of the case at trial—that this was a threatening call that elicited a false confession.

Wells's testimony was the only direct evidence that contradicted Hicks's testimony and his statements to others about how he felt during the call. When initially interviewed, Hicks told Investigator Janus that he had felt threatened by E.J. during the call. He also testified at trial that he felt threatened by E.J., an assertion that he later repeated to the pre-sentence investigator assigned to his case.

The Supreme Court was clear: a credible threat of physical violence by a government agent is sufficient to establish coercion. *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991). The State does not dispute, and we agree, that E.J. was acting as a police agent during the recorded conversation. If not, our inquiry here would end, as the Due Process Clause prohibits only state actors from using coercion to elicit a confession. *See Colorado v Connelly*, 479 U.S. 157, 164 (1986) ("Absent police conduct casually related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law.").

As the Wisconsin Court of Appeals noted in *Hicks I*, E.J. made threats during the call that a police officer would never be permitted to make to elicit a confession. For example, E.J.

stated, "you're going to f***ing talk to me about this right now, or you (sic) going to have like maybe 30 days to live, alright." R. 23-1 at 4. He also stated that he knew ex-KGB agents that might harm Hicks, *id.*, and implied that a child molester like Hicks would not fare well in prison. *Id.* at 11. It was objectively unreasonable for the state court to conclude that these threats were not coercive based upon Wells's testimony that Hicks did not feel threatened. Likewise, it was unreasonable for the state court to therefore conclude that Wells's decision not to challenge the admissibility of the recorded statements was permissible trial strategy. Therefore, Hicks has established that the state court's factual basis for its conclusion regarding the first prong of the *Strickland* analysis was unreasonable.

### b. No Prejudice in Failing to File Motion to Suppress

Because the state court did not address whether Wells's failure to object to the admission of the recorded statement was prejudicial to Hicks, we review this prong of the *Strickland* analysis *de novo. See Porter v. McCollum*, 558 U.S. 30, 39 (2009) (citing *Rompilla v. Beard*, 545 U.S. 374, 390 (2005)). Hicks maintains that his confession played an outsized role in his trial, and if it had not been admitted into evidence the jury would have returned a verdict of not guilty. We disagree.

As a threshold matter, it is not clear that the entire transcript and tape would have been suppressed had Wells filed such a motion. Before E.J. made any threats, he asked Hicks why he had sexually molested him as a child. Hicks made an inaudible response and then stated, "Um, can I uh, talk to you later?" R. 23-1 at 4. This statement could still have been presented to the jury had a motion to suppress been successful. The jury could infer guilt from Hicks's failure to immediately

deny E.J.'s allegation, one which was surely inflammatory and would have invoked a visceral response if untrue.

And, while we do not doubt the prejudicial nature of Hicks's confession, the record overwhelmingly supports the jury's guilty verdict. His confession was only a portion of the evidence the state offered against him at trial. E.J. testified in *vivid* detail about the abuse he endured. His testimony was graphic. He detailed for the jury the nature of the sexual acts, where he was in the home when they occurred and provided other details that supported the veracity of his testimony. There was also motive testimony provided by his two prior victims, who testified that they both were abused in a similar manner to E.J. Lambert, testified that when she confronted Hicks with E.J.'s allegations, Hicks admitted to the abuse, even providing a justification for his actions. Despite Hicks's claims to the contrary, this evidence simply cannot be considered "weak." We cannot say that there was a reasonable probability that the jury would have found Hicks not guilty had the statements in the recorded conversation been suppressed. Therefore, we reject Hicks's claim of ineffective assistance of counsel based upon Wells's failure to move to suppress the recorded the conversation and find that habeas relief is not warranted on this claim.

### 2. Failure to Object to the Prosecutor's Improper Statements

Hicks also asserts that he is entitled to habeas relief because Wells's failure to object to the prosecutor's improper closing argument constituted ineffective assistance of counsel. During his rebuttal closing argument, the prosecutor referenced Hicks's *Alford* plea, stating that Hicks wanted the jury to believe that he did not "really have a criminal record." R.

17-16 at 108. And then he asked the jury, "And was that a fair resolution for what happened? Plea bargaining it down to a couple of misdemeanors. Is that what should have happened here or should we deal with this case?" *Id.* While deliberating, the jury submitted a question to the court about Hicks's probation revocation in that earlier case. The court responded that there was no record evidence on why probation was revoked, and the jury returned later that day with a guilty verdict.

Like the Wisconsin Court of Appeals, we are very troubled by these comments. *See* R. 17-5 at 6. The prosecutor's statements were improper: the prosecutor invited the jury to convict Hicks in the current case because he had not been appropriately punished in his earlier case. And, because there was no objection, the jury was left with these questions posed just before it went to deliberate.

Furthermore, it is clear that the jury at least contemplated—if not wholly accepted—the prosecutor's suggestion, as evidenced by the question it submitted during deliberations. We are not convinced by the State's position that these were merely three sentences in an 11-page closing argument. The length of the statements is not what matters. The issue is their impact, and we are hard-pressed to say there was none. But, because, as we discuss further below, Hicks did not fairly present this claim to the Wisconsin Supreme Court for its consideration in his petition for review, we are barred by the doctrine of procedural default from providing him relief.

### a.  Procedural Default Bars Review of Claim

The district court concluded that Hicks has procedurally defaulted on this claim. We review this ruling *de novo*.

*McDowell v. Lemke*, 737 F.3d 476, 482 (7th Cir. 2013). A petitioner challenging his state conviction must "exhaust available state remedies before presenting his claim to a federal habeas court." *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017) (citing §2254(b)); *see also* § 2254(b)(1)(A) (stating that a writ of habeas corpus "shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State."). The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) *holding modified by Martinez v. Ryan*, 566 U.S. 1 (2012); *see also Rose v. Lundy*, 455 U.S. 509, 518 (1982) ("The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings.").

Therefore, a petitioner must "fairly present" his constitutional claims through at least one complete round of the state's established appellate review process before presenting the claims to a federal court for habeas review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Lombardo v. United States*, 860 F.3d 547, 555 (7th Cir. 2017). This includes presenting the claims to the state's highest court in a petition for discretionary review. *Boerckel*, 526 U.S. at 848. For a claim to be "fairly presented," the petitioner must place before the state court both the controlling law and the operative facts in a manner such that "the state court was sufficiently alerted to the federal constitutional nature of the issue to permit it to resolve the issue on that basis." *McDowell*, 737 F.3d at 482 (internal quotation marks and citations omitted). The failure to exhaust a claim or set of claims, results in procedural default, *Oaks v. Pfister*, No. 15-2924, 2017 WL 2991742, at *2 (7th Cir.

July 14, 2017) (citing *O'Sullivan*, 526 U.S. at 845), and we will not consider a procedurally defaulted claim on the merits. *Lombardo*, 860 F.3d at 555 (citing *Martinez*, 566 U.S. at 9–10).

There are limited exceptions to this rule that would allow us to reach the merits of a procedurally defaulted claim. The first exists where "the petitioner can demonstrate both cause for and prejudice stemming from [the] default." *Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004). Alternatively, a court may reach a procedurally defaulted claim if the petitioner can demonstrate that "a miscarriage of justice would result if habeas relief is foreclosed." *Id.* This requires that the petitioner demonstrate that he is "actually innocent of the offenses for which he was convicted, i.e., that no reasonable juror would have found him guilty of the crime but for the error(s) he attributes to the state court." *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327–29 (1995)). The petitioner, however, has not advanced any argument that these exceptions should apply here. Therefore, any argument that these exceptions apply has been forfeited and we will not endeavor to construct a legal argument on Hicks's behalf. *See Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011) ("Neither the district court nor this court are obliged to research and construct legal arguments for parties, especially when they are represented by counsel.").

While Hicks concedes that he could have done more to elaborate upon his claim, he nonetheless argues that this claim was fairly presented to the Wisconsin Supreme Court for two main reasons. First, because it was listed as its own stand-alone issue in the "Issues Presented for Review" section of his petition. Second, he argues that passing references to the claim in both the section entitled "Reasons for Granting

Review," and at the end of his state-law claim related to the closing argument were sufficient to present the claim. We disagree.

Whether a claim has been fairly presented to a state court is evaluated using four factors:

> 1) whether the petitioner relied on federal cases that engage in a constitutional analysis; 2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; 3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and 4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation.

*Ellsworth v. Levenhagen*, 248 F.3d 634, 639 (7th Cir. 2001). While we use these factors as a guide, our overall "task is to determine in practical terms whether the state courts were sufficiently alerted to the nature of [the petitioner's] federal constitutional claim." *White v. Gaetz*, 588 F.3d 1135, 1139 (7th Cir. 2009). Here, we find that Hicks has not met that burden.

While Hicks does identify this claim as its own standalone issue in his petition for review, his petition contains no argument whatsoever to support it. Further, his vague and sparse references to the claim in the 26-page petition, were insufficient to alert the Wisconsin Supreme Court of either the operative facts of the claim or the controlling federal law. For example, on the final page of his petition where he addresses his state-law claim based upon the prosecutor's closing argument, he states "[l]ikewise, counsel's decision not to object

was not a reasonable strategic decision." R. 17-10 at 27. But, he does not explain *why* this is true or cite to any decisions—federal or state—to support this assertion. This was not enough to meet his burden of fairly presenting the claim to the Wisconsin Supreme Court. Because the petition did not allow the Wisconsin Supreme court the opportunity to address this federal constitutional claim, the doctrine of procedural default precludes our review of the issue on the merits.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of habeas relief.